# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MARIE DAMUS, BRYAN CACEIDO,<br><br>Plaintiffs,<br>v.<br><br>PRIMARK US CORP., AMEREAM LLC, NEW JERSEY STATE POLICE,<br><br>Defendants. | Civ. No. 2:25-cv-13854 (WJM)<br><br>**AMENDED OPINION** |

<u>**WILLIAM J. MARTINI, U.S.D.J.:**</u>

This is a civil rights action in which New Jersey State Police Troopers Sammy Caba-Paulino, Fabian Matos, and Jose Argueta (the "Troopers") and separately, Ameream LLC ("Ameream"), move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). ECF Nos. 32, 40. The Court decides the matter without oral argument. Fed. R. Civ. P. 78(b). For the reasons stated below, the Troopers' motion to dismiss is **denied in part and granted in part**. Ameream's motion to dismiss is also **denied in part and granted in part**.

## I.     BACKGROUND

On June 17, 2023, Plaintiffs Maria Damus and Bryan Caceido ("Plaintiffs") were shopping at the Primark store ("Primark") in the American Dream Mall ("the Mall"), owned and operated by Ameream LLC ("Ameream"). Amended Complaint ("AC") ¶¶ 3, 13, 14, ECF No. 26. That same day, the "Meadowlands"[1] Troopers were dispatched to the Hot Topic store in the Mall because two employees reported their credit cards stolen and alleged that one of the stolen cards had been used to make a purchase at the Apple Store in the Mall. *Id.* ¶¶ 18, 19. Security personnel from the Mall "identified" two people whom they described as "one black male wearing a black t-shirt and jeans and one black female." *Id.* ¶ 21. The identified suspects were Plaintiffs. *Id.* ¶ 24. Mall security did not witness any suspicious behavior by Plaintiffs and purportedly failed to conduct any "meaningful investigation" of the theft despite having "access to additional surveillance footage that could have fully exonerated Plaintiffs." *Id.* ¶¶ 23, 28. Relying on only the Mall security's identification, Plaintiffs were detained for a "significant period of time" outside of the Primark store in handcuffs, searched with negative results, read *Miranda* rights, placed in the rear of a police car, and taken to the local State Police barracks. *Id.* ¶¶ 30-31, 33.

---

[1] For purposes of this motion, the Court assumes the "Meadowlands" Troopers refers to Defendant Troopers.

Eventually, the Troopers confirmed that surveillance video proved that Plaintiffs were not the individuals who used the stolen credit card and did not match the description of the thieves. *Id.* ¶ 34. Plaintiffs were released without being charged with any criminal or civil violation and were relayed back to their vehicle. *Id.* ¶ 35.

On June 17, 2025, Plaintiffs filed suit in state court against Ameream, Primark, and the New Jersey State Police ("State Police") alleging excessive force under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA") as well as state common law false imprisonment. The State Police removed the action on July 29, 2025. *See* Not. of Removal, ECF No. 1. Defendants each moved to dismiss. ECF Nos. 9, 10, 17. Plaintiffs voluntarily dismissed their claims against Primark. ECF No. 22. On November 12, 2025, the Court granted the State Police's motion to dismiss with prejudice but granted leave to amend the Complaint to name previously unknown individual state actors. ECF Nos. 24, 25. The claims against Ameream were also dismissed without prejudice. *Id.*

Plaintiffs filed an Amended Complaint on December 12, 2025 alleging under § 1983 and the NJCRA the following violations by the Troopers: 1) unlawful seizure based solely on the identification by Mall security without conducting an independent investigation to establish probable cause, Count I ¶¶ 41-48, Count IV ¶¶ 63-67; 2) use of excessive force by handcuffing and searching them without probable cause, Count II ¶¶ 49-53, Count IV ¶¶ 63-67; and 3) common law false imprisonment, Count V ¶¶ 68-75. As against Ameream, Plaintiffs assert claims under § 1983 for acting in concert with state officials, Count III ¶¶ 54-61, and common law negligence, Count VI ¶¶ 76-82.

Defendant Troopers move to dismiss the AC based on qualified immunity. Ameream moves to dismiss arguing that it did not act under color state law, personally participate in any unlawful conduct, or breach any duty to Plaintiffs.

## II.   DISCUSSION

### A. Rule 12(b)(6) Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir. 2005). Dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.,* 542 F.3d 59, 64 (3d Cir. 2008). This assumption of truth is inapplicable, however, to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and

2

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, *see id.* at 570, such that the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

B. Troopers' Motion to Dismiss

1. *Counts I & IV (Unlawful Seizure) - Qualified Immunity*

The Troopers contend they are entitled to qualified immunity against Plaintiffs' claims that they were unlawful seized without probable cause.[2] "The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is an affirmative defense that protects "all but the plainly incompetent or those who knowingly violate the law." *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (internal quotes and citation omitted). The Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson*, 555 U.S. at 232 (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*)). The qualified immunity analysis is a two-prong inquiry: "(1) whether the facts alleged by the plaintiff show the violation of a constitutional right and (2) whether the law was clearly established at the time of the violation [such that it would have been clear to a reasonable officer that his conduct was unlawful]." *Jefferson v. Lias*, 21 F.4th 74, 80 (3d Cir. 2021); *El v. City of Pittsburgh*, 975 F.3d 327, 334 (3d Cir. 2020). An answer in the negative to either prong entitles an officer to qualified immunity. *See Reedy v. Evanson*, 615 F.3d 197, 223-24 (3d Cir. 2010). Courts have "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

The Troopers focus their qualified immunity analysis on the second prong of the qualified immunity analysis, so the Court will likewise do so. "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *See James v. N.J. State Police*, 957 F.3d 165, 169 (3d Cir. 2020) (cleaned up). "[T]he inquiry is from the perspective of a reasonable officer," so courts are to consider "only the facts that were knowable to the defendant officer." *Id.* (citation modified).

---

[2] The NJCRA is "interpreted analogously to § 1983, so [Plaintiffs'] claims under that statute rise and fall with [their] parallel § 1983 claims." *Mervilus v. Union Cnty.*, 73 F.4th 185, 193 n. 4 (3d Cir. 2023) (citation modified)). "The defenses and immunities applicable to federal constitutional claims apply with equal force to parallel New Jersey state constitutional claims." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 n.7 (3d Cir. 2015) (citing *generally* N.J. Stat. Ann. §§ 10:6–1 *et seq.*)); *Brown v. State*, 230 N.J. 84 (N.J. 2017).

It is clearly established that a positive identification from a victim or eyewitness generally satisfies probable cause *"unless it is unreliable or undermined by exculpatory evidence."* *Pinkney v. Meadville, Pennsylvania*, 95 F.4th 743, 749 (3d Cir. 2024) (emphasis added); *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 477–78 (3d Cir. 2016) ("[S]tatements of a victim witness are typically sufficient to establish probable cause in the absence of independent exculpatory evidence or substantial evidence of a witness's own unreliability that outweighs the probable cause that otherwise exists." (citation modified)). Below, the Court examines more closely the law regarding "unreliable" identification or "exculpatory evidence" that may undermine probable cause.

### a. *Reliable Identification*

The Troopers argue that a positive identification from security guards is inherently reliable that it alone supports probable cause and that it is not clearly established that professional mall security are *not* reliable witnesses whom investigating law enforcement officers can rely on for probable cause. However, the law as the Troopers frame it, is not clearly established because it is incorrect. The Troopers identify no Third Circuit jurisprudence that creates a special presumption that professional security personnel are so inherently reliable that police have probable cause once they receive an identification from a security guard. In fact, at least one circuit has rejected such a "sweeping generalization[]" that private security officers are inherently reliable. *See Acosta v. Ames Dep. 't Stores, Inc.*, 386 F.3d 5, 10 (1st Cir. 2004).

Rather, where officers rely solely on a witness identification, that "single witness identification" must "have at least basic signs of reliability to amount to probable cause" such as corroboration. *Pinkney*, 95 F.4th at 749; *Andrews v. Scuilli*, 853 F.3d 690, 704 (3d Cir. 2017) ("[H]aving only one witness as the source of information about a crime and perpetrator does, logically, cast a brighter light on the body of evidence she or he provides" and enhance the significance of any available "indicia of the witness's reliability"). An identification that is made by a *victim or eyewitness* may bear indicia of reliability. *See Wilson v. Russo*, 212 F.3d 781, 790, 791 (3d Cir. 2000) ("When a police officer has received a reliable identification by a victim of his or her attacker, the police have probable cause." (citation modified)); *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 n. 8 (3d Cir. 2000) (deciding that a credible report from the school principal who witnessed the alleged theft sufficiently established probable cause for an arrest such that the officer did not need to "undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed"); *Karkut v. Target Corp.*, 453 F. Supp. 2d 874, 884 (E.D. Pa. 2006) ("To establish probable cause for an arrest, the Third Circuit requires exactly what [the officer] accomplished, obtaining the credible report of an eyewitness."). *See also Acosta*, 386 F.3d at 10 (finding officer had every reason to believe that store's security officer who witnessed pilferage was being truthful and noting that "uncorroborated testimony of a victim or other percipient witness, standing alone, ordinarily can support a finding of probable cause"). Thus, it is clearly established that when officers rely solely on an uncorroborated identification to support probable cause, the identification must be based

4

on a victim or eyewitness statement or have some indicia of reliability such as corroboration.

Accepting Plaintiffs' allegations as true, Plaintiffs have sufficiently alleged at the motion to dismiss stage, that the Troopers violated a clearly established right when they detained Plaintiffs based solely on an uncorroborated identification that had no indicia of reliability and was made by private security guards who did not witness any suspicious conduct.

b. *Exculpatory Evidence*

Next, the Troopers insist that they did not violate a clearly established law by not conducting an independent investigation to establish probable cause because a reasonable officer would not have known that probable cause required more than a positive identification. While a reliable identification alone may be the basis for probable cause, exculpatory evidence may undermine that probable cause. *See Goodwin v. Conway*, 836 F.3d 321, 328 (3d Cir. 2016) ("An officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists." (citation modified)). Officers are to weigh the inculpatory evidence against any "plainly exculpatory evidence" that is "known" and "available to the officer." *Wilson*, 212 F.3d at 791; *Andrews*, 853 F.3d at 702 (noting that "highly reliable, independent, exculpatory evidence known by the officer" can undermine reliability of eyewitness who provides positive identification); *see also Wexler v. Hawkins*, __ F.4th __, 2026 WL 1090195, at *4 (3d Cir. Apr. 22, 2026) (limiting "plainly exculpatory evidence" to instances of "*obvious* exculpatory evidence that casts a dark cloud on the reliability of other evidence suggesting guilt." (citation modified)). *See e.g., Brown v. Kepple*, No. 22-154, 2024 WL 4137313, at *21 (M.D. Pa. Sept. 10, 2024) (finding that officers who detained plaintiffs based on the store employee's identification, but without watching the store video surveillance they knew about and were given a copy of, were not entitled to qualified immunity because the right to be free from seizure for retail theft where officers did not pursue known, readily available, and "reasonable avenues of investigation" is clearly established).

Although it is clearly established that in determining probable cause, officers must weigh inculpatory evidence against any obviously exculpatory evidence known and available to the officer, Plaintiffs do not sufficiently plead a violation of that right. Plaintiffs contend that *Mall security* had access to exculpatory evidence (video surveillance footage), but do not allege that that evidence was *obviously* exculpatory evidence *known and available to the Troopers*.

In sum, the Court agrees that under the second prong of the qualified immunity analysis, the law is clearly established law. However, the Troopers are not entitled to qualified immunity because under the first prong, Plaintiffs plausibly allege a violation of the right that when probable cause for a seizure is based solely on a single positive

5

identification, the identification must be based on a victim or eyewitness statement or have some other indicia of reliability. The motion to dismiss the unlawful seizure claims in Counts I and IV is **denied.**

### 2. Counts II & IV (Excessive Force) – Failure to State a Claim

"To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a seizure occurred and that it was unreasonable." *Est. of Smith v. Marasco*, 430 F.3d 140, 148 (3d Cir. 2005) (citation modified)). Reasonableness is determined by whether "under the totality of the circumstances, 'the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." *Williams v. City of York*, 967 F.3d 252, 259 (3d Cir. 2020) (citing *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004)). Under long recognized Fourth Amendment jurisprudence, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. *Graham v. Connor*, 490 U.S. 386, 396 (1989). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, [] violates the Fourth Amendment." *Id.* (internal quotation marks and citation omitted). In this case, Plaintiffs maintain that Troopers Caba and Matos "used force against Plaintiffs by handcuffing them, searching them, and placing them in a police car" and that such use of force was "objectively unreasonable" because there was no probable cause to believe Plaintiffs had committed any crime. Count II ¶¶ 50-51, Count IV ¶ 66. These allegations do not as a matter of law constitute a constitutional excessive force claim.

First, challenging the basis for a detention as lacking probable cause is in essence an unlawful seizure claim. "Excessive force claims concern the reasonableness of the *force* used in effectuating an arrest," which is a separate inquiry from whether the arrest is unreasonable due to lack of probable cause. *See Roberson v. Borough of Glassboro*, 570 F. Supp. 3d 221, 228 (D.N.J. 2021) (emphasis added); *see e.g., Arditi v. Subers,* 216 F. Supp. 3d 544, 554 (E.D. Pa. 2016) (denying defendant summary judgment on illegal seizure claim that as to whether plaintiff "should have been subject to seizure and handcuffing at all" while granting motion on excessive force claim).

Second, the Troopers' actions are components of, or incidental to the detention. *See Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 441 (D.N.J. 2011) (concluding that officer's "initial decision to handcuff Plaintiff did not constitute excessive force. He handcuffed her in the course of effecting the arrest."). Apart from actions effectuating the detention and search, Plaintiffs allege no other use of force. *See e.g., Cincerella v. Egg Harbor Twp. Police Dep't*, No. 06-1183, 2009 WL 792489, at *10 (D.N.J. Mar. 23, 2009) (noting that in the course of arresting individual for a violent crime, the "use of handcuffs by itself cannot support an excessive force claim" but how plaintiff was treated *after* he was handcuffed – making handcuffs too tight and pushing him into police car – may

6

support excessive force claim). Apart from their belief that the Troopers lacked probable cause for the seizure, Plaintiffs do not claim that the handcuffing was done improperly. *See, e.g., Williams,* 967 F.3d at 260 (concluding plaintiff could not show violation of constitutional rights where officers failed to loosen her handcuffs but had not been notified of arrestee's pain); *Gilles v. Davis,,* 427 F.3d 197, 208 (3d Cir. 2005) (affirming there was no excessive force where plaintiff complained that handcuffed were too tight, but showed no outward signs of discomfort while handcuffed and did not subsequently receive medical treatment).

Because Plaintiffs have failed to allege any facts to support an excessive force claim against the Troopers, the motion to dismiss the excessive force claims is **granted**.

### 3. *Count V (Common Law False Imprisonment)*

"To state a claim for false imprisonment, a plaintiff must establish that he was detained, and that the detention was unlawful." *James v. City of Wilkes-Barre,* 700 F.3d 675, 682-83 (3d Cir. 2012) (citing *Wallace v. Kato,* 549 U.S. 384, 389 (2007)). Because Plaintiffs plausibly allege that the Troopers lacked probable cause to detain Plaintiffs, the Troopers' motion to dismiss Count V is **denied**.

### C. Ameream's Motion to Dismiss

### 1. *Count III (§ 1983 Joint Action)*

Plaintiffs insist that Ameream, while not a state actor, acted through its security personnel under color of state law when it "identified Plaintiffs as suspects without a reasonable basis," "took control" of the investigation, and "directed" the Troopers "to detain Plaintiffs at the Primark store." AC ¶¶ 25, 56-57. By detaining Plaintiffs without conducting an independent investigation to establish probable cause, the Troopers purportedly "subordinated their judgment to Ameream's security team." *Id.* ¶¶ 58-59.

A private entity is liable under § 1983 "if it 'may fairly be said to be a state actor.'" *Cahill ex rel. L.C. v. Live Nation,* 512 F. App'x 227, 230 (3d Cir. 2013) (citing *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982)). Under the "joint action test," a "private party will be deemed a state actor if it is a 'willful participant in joint action with the State or its agents.'" *Cahill,* 512 F. App'x at 230 (citing *Lugar,* 457 U.S. at 941). In cases involving suspected shoplifting, a private entity may be liable under § 1983 for the conduct of police officers if: "(1) the police have a pre-arranged plan with the store; and (2) under the plan, the police will arrest anyone identified as a shoplifter by the store without independently evaluating the presence of probable cause" such that "the police substituted the judgment of private parties for their own official authority." *Cruz v. Donnelly,* 727 F.2d 79, 80-81 (3d Cir. 1984). The "critical" inquiry is "whether the state, through its agents or

7

laws, has established a formal procedure or working relationship that drapes private actors with the power of the state." *Id.* at 82.

Here, the only allegation that could possibly suggest a pre-arranged "plan" is the claim that Mall security "directed" the Troopers to detain Plaintiffs. *See* AC ¶ 57. However, absent any claim that police would *not* detain suspects as part of a routine shoplifting investigation without such direction from Mall security, Plaintiffs' allegations merely show that the Troopers performed a routine shoplifting investigation. *See Cruz,* 727 F.2d at 81. Any assertion that the Troopers had an agreement to subordinate their judgment or allowed Mall security to "take control" is conclusory and not entitled to the presumption of truth. *See e.g., id.* (finding that private actors were not state actors where store employees called the police and "ordered and commanded" that officers strip search a shopper suspected of shoplifting, which they did). Plaintiffs fail to state a § 1983 claim that Ameream acted under color of state law and in concert with the Troopers in detaining Plaintiffs, or that that was "in accord with their habitual joint actions." *See* AC ¶¶ 26, 32, and *generally* (identifying no allegations of any prior incidents or pattern of conduct similar to single incident involving Plaintiffs). Ameream's motion to dismiss Count III is **granted**.

### 2. *Count VI (Common Law Negligence)*

Plaintiffs allege that Ameream owed them a duty of care to exercise reasonable care in identifying and reporting suspected criminal activity to law enforcement but breached that duty by identifying Plaintiffs as suspects and tracking them through the mall "based on minimal information" and by "failing to fully investigate the video surveillance before directing State Police officers to detain Plaintiffs." AC ¶¶ 77-79. The duty Plaintiffs identify as having been breached is the duty that a commercial property owner owes of "due care under all circumstances," specifically including the "duty to conduct a reasonable inspection to discover latent dangerous conditions." Pls. Opp'n Br. 12 (citing *Prioleau v. Kentucky Fried Chicken, Inc.,* 223 N.J. 245, 258 (2015)). Plaintiffs posit that this duty extends to require a reasonable investigation of suspected criminal activity before involving law enforcement. While properly conducting an investigation may not fall within the scope of a duty to discover latent dangerous conditions, due care may include, for example, a "duty to exercise reasonable care to avoid the risk of harm to another," *Clohesy v. Food Circus Supermarkets, Inc.,* 149 N.J. 496, 502 (1997) (citation modified). At this juncture, Plaintiffs have sufficiently pled facts that allege that Ameream owed Plaintiffs a duty that it breached. Ameream's motion to dismiss Count VI is **denied**.

## III. CONCLUSION

The Troopers' motion to dismiss the unlawful seizure claims in Counts I and IV and the Count V common law false imprisonment claim is **denied.** The Troopers' motion to dismiss the excessive force claims in Counts II and IV for failure to state a claim is **granted.**

AExream's motion to dismiss the § 1983 claim in Count III is **granted**. Aexream's motion to dismiss the negligence claim in Count VI is **denied**. An appropriate Order follows.

WILLIAM J. MARTINI, U.S.D.J.

Date: May 6, 2026

9